**FORD v. VETSCH.\***

No. 16289.

Court of Appeal of Louisiana. Orleans.

May 4, 1936.

\*Rehearing denied May 18, 1936. Writ of error refused June 30, 1936.

Cobb & Jones and Morris Wright, all of New Orleans, for appellant.

L. D. Dunbar, of New Orleans, for appellee.

JANVIER, Judge.

J. Louis Ford, alleging himself to be the owner of eight promissory notes drawn by W. C. Vetsch totaling $171.92, and that Walter C. Vetsch is the maker of the said notes, seeks judgment against the said Walter C. Vetsch for the said amount, together with interest and attorney's fee as stipulated in the notes.

Ford alleges that he acquired the notes at a sale legally conducted by an authorized auctioneer, at which sale certain assets of Insurance Securities Company, Inc., were sold under order of court in the receivership proceedings of that corporation. He also alleges that, after the sale, the notes were indorsed over to him by the receivers of the said corporation and that the said receivers also executed and delivered to him a written assignment, under the terms of which they transferred and assigned to him all of their interests and rights in and to the said notes.

Defendant, Vetsch, denies that Ford is the true and lawful owner of the said notes, averring that in the matter entitled Clay W. Beckner and S. Sanford Levy, Receivers of Insurance Securities Co., Inc., v. William C. Vetsch, No. 206305 of the docket of the civil district court, the said receivers had brought suit on the said notes, alleging that they had been executed by William C. Vetsch and had obtained a judgment against William C. Vetsch. The contention now made is that plaintiff did not purchase the notes on which he is now attempting to sue, but purchased the judgment which the said receivers had already obtained against William C. Vetsch, and that he cannot now obtain judgment on the same notes against Walter C. Vetsch.

There was judgment for plaintiff Ford against Walter C. Vetsch as prayed for, and he has appealed.

It appears from the record that the sale, at which Ford made his purchase, was duly authorized by the court in which the receivership proceedings were pending, and that the advertisement of the sale described the property which was purchased by Ford as follows: "Item No. 28—Eight promissory notes of W. C. Vetsch, totalling $171.92. All notes bearing 6½% interest per annum, reduced to judgment."

The procés verbal of the auctioneer described the property purchased by Ford just as it was advertised. The said procés verbal was homologated by the court, and the sale to Ford and certain other sales made at the same time were approved. When his purchase was consummated, Ford obtained from the receivers the assignment to which we have referred, and he also had them indorse the said notes over to him. He then filed in the former proceeding, in which the receivers had obtained judgment against William C. Vetsch, a motion reading as follows: "On motion of L. D. Dunbar, attorney for J. Louis Ford, owner of the judgment herein obtained by default, signed on the 7th day of May, 1934, and the notes and effects thereof; that in directing said suit the petition was erroneously drawn and misdirected to a party other than the maker of the notes on which this suit is predicated, and who does not exist; that in view of the foregoing, the judgment by default obtained herein is a nullity, and your mover asks leave to dismiss this suit and withdraw the eight notes filed herein, drawn by W. C. Vetsch."

On this motion Ford obtained an order from the court which had rendered the judgment against William C. Vetsch, which order reads as follows: "It is ordered by this court that this suit be dismissed, and that J. Louis Ford, mover herein, be allowed to withdraw the eight notes filed herein, which notes were executed by W. C. Vetsch; all dated the 15th day of October, 1932."

Believing that there might have been some question as to his right to permanent-

ly withdraw the said notes, Ford filed another motion and obtained another order permitting him to permanently withdraw them.

After obtaining the said orders and after withdrawing the said notes, Ford then filed this suit alleging that the notes had been drawn by Walter C. Vetsch and not by William C. Vetsch.

■■ Able counsel for defendant argue that, when the judgment was rendered in the first suit against William C. Vetsch, the notes on which it was based were merged in the judgment, and thereafter had no legal existence as notes. There is no doubt that this is the general rule, but we believe that; when a judgment has been rendered on notes and later the judgment is annulled, the owner of the notes may again claim them and may assert any rights which may yet remain as a result of his ownership of them. Defendant apparently concedes this, but maintains that a definitive judgment may be revised, set aside, or reversed only in one of the four ways which are specifically set forth in article 556 of the Code of Practice, and which are as follows:

"1. By a new trial.

"2. By appeal.

"3. By action of nullity.

"4. By rescission."

He contends that the voluntary ex parte annulment of the former judgment and the dismissal of the former suit have no effect.

It is evident that article 556 of the Code of Practice has application to an adverse attack by a judgment debtor upon a judgment against him, or to a situation in which rights acquired by others may be adversely affected or prejudiced by the annulment of the former judgment. It does not prevent the judgment creditor, who realizes that the judgment held by him is a nullity, from having it set aside, on his own motion, so that he may again obtain back the evidences of debt and proceed under them to obtain a proper judgment.

■ None of the cases cited by defendant concerning the amendment or annulment of a judgment has any application here. Only one of them involves a voluntary annulment sought by a judgment creditor of a judgment held by him. In that case—Florsheim Bros. Dry Goods Co.

v. Williams, 45 La.Ann. 1196, 14 So. 120—the person who objected to the voluntary annulment of the first judgment was the judgment debtor, who was also sought to be made defendant in the second suit. The court held that a judgment debtor has certain rights under a judgment against him, the right to appeal from the judgment being one of them, and that, after a case has been completely tried and a judgment rendered, the party cast has a right to appeal from that judgment on that record as made up, and that, where a plaintiff, in such suit, believing that his record is not perfect and that the judgment may be reversed on appeal, seeks to voluntarily dismiss that suit so that he may bring it over again and may make a more perfect record, the defendant having the right to appeal from the judgment may object to the voluntary dismissal of the suit or to the voluntary annulment of the judgment. But that is not the situation here because the rights of Walter C. Vetsch were not in any way affected by the judgment against William C. Vetsch.

The cases involving the voluntary dismissal of suits have no application because they all present situations in which the rights of parties might have been adversely affected by the voluntary dismissal, whereas here it is a third person, who was in no way involved in the former suit, and who was in no way affected by it, who contends that the former suit could not be dismissed or annulled.

The only question which is presented here is whether or not Walter C. Vetsch, who was not a party to the first suit, who was not affected in any way thereby, can be heard to contend that because, through error, judgment in that suit was rendered against some other person, the error cannot be corrected and a proper suit brought against him.

Assuming for the moment that there is no such person as William C. Vetsch, and that the judgment as rendered is, for that reason, a nullity, obviously it would be absurd to require that Ford, the owner of the judgment, should bring a formal action to annul his own judgment which he concedes is a nullity. Against whom could he bring such an action?

■ The original owners of the notes, had they realized before selling them that they had made a mistake in bringing suit against William C. Vetsch, could have ob-

tained an annulment of the judgment obtained in that suit. Why, then, should not their assignee be permitted to do so?

Counsel for defendant argue that plaintiff did not purchase the notes, but only the judgment into which they had been merged. But he purchased all the rights which were attached to the judgment. He purchased the right to have it set aside if it was defective or ineffective and to procure the notes on which it had been predicated after it had been set aside.

The advertisement of the sale and the procés verbal of the auctioneer both described the item sold as "the notes." It is true that they both described the notes as having been reduced to judgment, but, since the testimony here shows that the said judgment is.null by reason of the fact that the judgment debtor does not, in fact, exist and never existed, then the descriptive words "reduced to judgment" merely represent defective description, for the reason that the judgment referred to is not a valid one, and do not prevent the view that what Ford purchased, at the time of the sale, was the notes and not merely the defective judgment.

The contention is made that the sheriff's return on the citation showing that service in the original suit was made on William C. Vetsch conclusively shows that there is a William C. Vetsch, and also conclusively shows that the judgment is not, and could not be considered as, a nullity. But here, too, the question presented is one which cannot be raised by Walter C. Vetsch. He is in no way concerned with or prejudiced by the annulment of that judgment. If he signed the notes in question, then the other judgment was obviously incorrectly rendered; if he did not sign the notes, he should have produced evidence to that effect. It will be noted that he did not take the witness stand to deny that the notes had been executed by him. In fact, the record in this case justifies the conclusion which was arrived at by the trial court that his objections are merely technical and that to sustain them would result in an obvious miscarriage of justice.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, J., dissents.